IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Eric SHAPIRO, *et al.*, | |
| Plaintiffs, | Civil No. 17-2583 (RBK/AMD) |
| v. | **OPINION** |
| ALLIANCE MMA, INC., *et al.*, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Plaintiffs' Motion for Entry of Order Preliminarily Approving Settlement and Establishing Notice Procedures. (ECF Nos. 53-54.) The motion is unopposed. As the Court finds the proposed settlement satisfies Rule 23 and that the proposed Notice to the class does as well, the motion for preliminary approval is **GRANTED**.

I.  BACKGROUND

A. The IPO and Subsequent Litigation

This securities class action was filed on April 17, 2017. (ECF No. 1.) The Court later appointed Daniel Ciccarelli, Michael Desantis, Michael Malcolm, Thomas Bendheim, and Anthony Shenk as Lead Plaintiffs and The Rosen Law Firm as Lead Counsel. (ECF No. 29.) On January 16, 2018, Lead Plaintiffs filed their amended complaint on behalf of all persons who had acquired the common stock of Alliance MMA, Inc. ("Alliance") in Alliance's October 6, 2016 Initial Public Offering ("IPO"), or who had acquired stock thereafter pursuant to Alliance's Registration Statement and Prospectus, issued in connection with the IPO during the period from October 6, 2016 to April 12, 2017. The amended complaint stated claims under sections 11,

1

12(a)(2), and 15 of the Securities Act of 1933. (*See* ECF No. 33.) The amended complaint also named Defendants Alliance, its then-CEO Paul K. Danner III, its CFO John Price, and Network 1 Financial Securities, Inc. ("Network 1"), who served as the underwriter for Alliance's IPO (collectively, "Defendants").

On March 2, 2018, Defendants filed their motions to dismiss, staying discovery under the Private Securities Litigation Reform Act (the "PSLRA"). 15 U.S.C. § 78u-4(b)(3)(B). Lead Plaintiffs and Defendants subsequently participated in a mediation conference before retired U.S. District Judge Faith Hochberg, engaged in extensive arm's-length negotiations, and reached a settlement. The motions to dismiss have since been dismissed during the pendency of the motion for preliminary approval of a class settlement.

### B. The Proposed Settlement

Defendants deny all wrongdoing, and Plaintiffs do not concede any points about the strength of their case. (Proposed Settlement, ¶¶ 6, 7.) The agreement proposes to relinquish all settlement class members, or their assigns, of any claims in connection with the settlement. (*Id.*, ¶ B.2.) In exchange, Defendants agree to pay $1,550,000 into an escrow account within 14 days of the issue of an order granting preliminary approval. (*Id.*, ¶ C.1.) Of this sum, $1,520,000 shall be paid by Alliance, Mr. Danner, and Mr. Price, and $30,000 will be paid by Network 1. (*Id.*) The 14 days will not begin to run, however, until Lead Plaintiffs' counsel provides funding and tax information agreed to by the parties. (*Id.*)

The settlement fund, inclusive of interest, will be used to pay (a) notice and administration expenses; (b) attorneys' fees and expenses authorized by the Court; (c) awards to Lead Plaintiffs; and (d) other fees or expenses authorized by the Court. (*Id.*, ¶ C.2.) Sums held in escrow shall be held by an escrow agent for the benefit of Lead Plaintiffs and the Settlement Class until the

settlement is finally approved. (*Id.*, ¶ C.3.) Claims are to be administered by Strategic Claims Services, selected by Lead Plaintiffs' counsel. (*Id.*, ¶ D.1.) Settlement class members seeking to participate in the settlement must submit a Proof of Claim and Release. (*Id.*, ¶ D.3.)

## II. DISCUSSION

### A. Preliminary Approval of the Proposed Class Action Settlement

Under Federal Rule of Civil Procedure 23(e), the settlement of a class action requires court approval. Fed. R. Civ. P. 23(e)(2). Review of a proposed class action settlement is a two-step process: (1) preliminary approval and (2) a subsequent fairness hearing. *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005). At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation. If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, and opt out of the settlement. *See* Fed. R. Civ. P. 23(c)(3), (e)(1), (e)(5). Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient. Generally, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Nasdaq Mkt. Makers Antitrust Litig.*, 176 F.R.D. at 102 (quoting Manual for Complex Litigation, Third § 30.41 (West 1995)).

At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing where class members may object to the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is given final approval. Fed. R. Civ. P. 23(e)(2). *See also In re Nat'l Football League*

*Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) ("Under Rule 23, a settlement falls within the "range of possible approval," if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied."). A court considering final approval of a class action settlement must evaluate the settlement under the factors set out in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

As discussed in more detail below, the Court finds that the proposed settlement satisfies the inquiry for preliminary approval.

*1. This settlement was negotiated at arm's length between experienced counsel*

The proposed settlement appears to be the result of an arm's-length negotiation between experienced counsel for Plaintiff and Defendant. The parties negotiated their respective positions and reached an agreement based upon their interests and the relative risks of prolonged litigation. The parties participated in a mediation conference on March 8, 2017 before the Honorable Faith Hochberg, retired U.S. District Judge. "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), aff'd, 559 F. App'x 151 (3d Cir. 2014) (internal marks omitted). While the Court notes that the independence of a mediator is not necessarily assumed when the parties bargain before a hired mediator, the Court finds that the parties are sophisticated parties who engaged in sincere negotiations. This supports preliminary approval. *Cf. Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting Manual for Complex Litigation, Third, § 30.42 (West 1995)) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

### 2. The Girsh factors

The parties also seek Court approval of their class action settlement agreement. The process for approving a preliminary settlement offer is less formal than final approval; it is not binding and may be conducted informally. *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. July 16, 2007). The purpose of conducting a preliminary evaluation is to ensure that there are no obvious deficiencies in the settlement that would preclude final approval. *Id.*

While the issue of final settlement approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the offer's completion. *See, e.g.*, *Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5–6 (D.N.J. Aug. 6, 2014). The Third Circuit requires evaluation of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 157.

The *Girsh* factors weigh in favor of preliminary approval. First, securities actions are "inherently complex" matters that may become prohibitively expensive as they proceed into discovery. *See, e.g.*, *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000). With respect to the second factor—the reaction of the class to the settlement—it is too early to say with any certainty how the class would react to the settlement. The third factor, too, is largely a wash here. Discovery has been stayed pursuant to the PSLRA, and the full extent of damages is as yet unclear, but Lead Plaintiffs have obtained an expert damages estimation that provides some

basis for understanding the interests of the class. The parties also appear to have relatively clear views of the strengths and weaknesses of their cases.

The Court agrees with Lead Plaintiffs that the fourth, fifth, and sixth *Girsh* factors support preliminary approval. Risk attends to all litigation, and Lead Plaintiffs are refreshingly straightforward with the potential shortcomings of their case, particularly the potential difficulties in ascertaining some damages. The Court also finds that the seventh, eight, and ninth *Girsh* factors support preliminary approval. Alliance is a relatively new company that operated at a loss during the time of its IPO (Br. at 8) and its ability to withstand a greater judgment is unclear. Lead Plaintiffs represent that this $1.55 million settlement is 29.8% of maximum statutory damages, which they aver compares "extremely favorably" to the average of other securities fraud settlements. *See, e.g.*, *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186 CAS, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005) (noting a settlement average of 5.5% to 6.2% of estimated losses in securities fraud settlements); *see also* Larrni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, Cornerstone Research, "Securities Class Action Settlements: 2017 Review and Analysis" at 9 (noting that between 2008 and 2017, securities class actions alleging Section 11 claims settle for a median recovery of 7.5% of statutory damages) (Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2017-Review-and-Analysis (Last Accessed: June 28, 2018).

In sum, preliminary evaluation of the *Girsh* factors indicates settlement is appropriate. The proposed settlement does not appear to unfavorably benefit the class representative or any segment of the class. The Court therefore finds, as a preliminary matter, that the proposed settlement is fair, adequate, and reasonable.

## B. Certification of the Settlement Class

In order to approve a class settlement agreement, a district court must determine that the requirements for class certification under Rule 23(a) and (b) are met. *In re Pet Food Products Liability Litigation*, 629 F.3d 333, 341 (3d Cir. 2010). Under Rule 23(a), the parties must demonstrate:

> (1) numerosity (a 'class so large that joinder of all members is impracticable');
> (2) commonality ('questions of law or fact common to the class');
> (3) typicality (named parties' claims and defenses 'are typical . . . of the class'); and
> (4) adequacy of representation (class representative 'will fairly and adequately protect the interests of the class').

*Id.* at 341 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997)) (alterations omitted). Under Rule 23(b)(3), certification is proper if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A plaintiff bears the burden of demonstrating that Rule 23's requirements are met by a preponderance of the evidence, and the district court "must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 306 (3d Cir. 2008). Thus, a district court should certify a class "only if the court is 'satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

All of the class certification requirements are intended to serve as "guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly

7

and adequately protected in their absence." *Amchem*, 521 U.S. 591, 626 n.20 (citations and internal quotation marks omitted).

   1. *Rule 23(a)*

      a. Numerosity

Numerosity is satisfied in this securities case, as it is presumed "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Moreover, courts have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security. *See, e.g.*, *In re Cigna Corp Sec. Litig.*, No. CIV.A. 02-8088, 2006 WL 2433779, at *2 (E.D. Pa. Aug. 18, 2006).

      b. Commonality

Rule 23(a)(2) is also satisfied in this case, as Plaintiffs all "share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 597 n.10 (3d Cir. 2009) (noting that "only one question of law or fact in common is necessary") (citations omitted). This "requirement may be satisfied by a single common issue" and "is easily met." *Baby Neal*, 43 F.3d at 56. Plaintiffs' claims concern alleged fraud during Alliance's IPO, a common fact shared among the putative class. *See In re Corel Corp. Sec. Litig.*, 206 F.R.D. 533, 540 (E.D. Pa. 2002) ("Courts in this Circuit also have recognized that securities fraud cases often present a paradigmatic common question of law or fact."). The Court finds that there are common issues of both law and fact such that the commonality requirement is satisfied.

      c. Typicality

The typicality requirement is satisfied when the named plaintiff has (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants,

8

and (3) their claims are based on the same legal issues. *Blake Partners, Inc. v. Orbcomm, Inc.*, 2008 WL 2277117, at *6 (D.N.J. June 2, 2008) (citing *Weiss v. York Hosp.*, 745 F.2d 786, 809 n.36 (3d Cir. 1984)). As a securities action, Plaintiffs are affected by the same event; the crux of this case is Defendants' allegedly false and misleading statements in Alliance's Registration Statement and Prospectus.

> d. Adequacy

The fourth threshold requirement of Rule 23(a) is that a plaintiff must show that as class representative she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement has two components. First, the Court considers whether Plaintiffs' counsel is qualified, experienced, and able to conduct the litigation. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995)). Second, the Court considers whether there are any conflicts of interest between the named parties and the class they seek to represent. *In re Prudential*, 148 F.3d at 312 (citing *Amchem*, 521 U.S. at 594).

Rule 23(g) sets forth the criteria for evaluating the adequacy of Plaintiffs' counsel. *See* Fed. R. Civ. P. 23(g); *Sheinberg v. Sorensen*, 606 F.3d 130, 132 (3d Cir. 2010); *Coyle v. Hornell Brewing Co.*, No. CIV. 08-2797 JBS/JS, 2011 WL 3859731, at *5 (D.N.J. Aug. 30, 2011) ("while *Sheinberg* does not directly address whether the Rule 23(g) factors are to be considered when evaluating the adequacy of class counsel prior to the certification of a class, the language of the opinion can be read to apply in such a circumstance."). Rule 23(g) directs the Court to consider

> (i)  the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

9

>   (iii)   counsel's knowledge of the applicable law; and
>   (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The Court finds that lead counsel, The Rosen Law Firm, adequately represents the class as counsel. The firm has successfully prosecuted many securities class actions and has already dedicated a significant amount of time to this action. *See Knox v. Yingli 16 Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement").

We turn to the adequacy of the Lead Plaintiffs themselves. A named plaintiff is "adequate" if his interests do not conflict with those of the class. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). There are no obvious conflicts between the Lead Plaintiffs and the putative class, as all class members' claims concern the same set of transactions and representations. *See Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012) ("the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class.").

   2. *Rule 23(b)(3)*

As the proposed class meets the threshold requirements of Rule 23(a), the Court now turns to Rule 23(b). Lead Plaintiffs seek to certify a class action under Rule 23(b)(3). In determining whether common questions of law or fact predominate and whether a class action is superior to other available methods of litigation, the Court may evaluate

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

  a. Predominance

The primary question in the predominance inquiry is "whether common questions predominate over questions affecting only individual members." *In re Life USA Holding Inc.*, 242 F.3d 136, 144 (3d Cir. 2001). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual . . . a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Hydrogen Peroxide*, 552 F.3d at 311 (citations omitted) (internal quotations omitted).

Common questions of law and fact predominate in this action. Securities actions are almost in a class of their own for the uniformity of the questions of law and fact that they present, and this case is no exception to that rule. *See Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). The only issue that appears to be subject to variation will be damages, and "it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate." *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 456 (3d Cir. 1977). The Court finds the proposed class preliminarily satisfies the predominance requirement of Rule 23(b)(3).

b. Superiority

In determining whether a class action is the superior form of handling a case, a court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *Georgine v. Amchem Prods.*, 83 F.3d 610, 632 (3d Cir. 1996). Among other considerations, class treatment is often superior where individual claims are small or modest. *See Jones v. Commerce Bancorp, Inc.*, No. 05–5600, 2007 WL 2085357 at *4 (D.N.J. July 16, 2007) (citing *In re Prudential*, 148 F.3d at 315).

As a practical matter, investors defrauded by securities law violations have no recourse other than class relief. *Cf. Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[m}ost of the plaintiffs would have no realistic day in court if a class action were not available"); *Smith v. Suprema Specialties, Inc.*, No. CIV. 02-168 (WHW), 2007 WL 1217980, at *10 (D.N.J. Apr. 23, 2007) ("class actions are favored in the securities litigation context because they are necessary to meaningfully enforce the securities laws"). This is especially true where many class members may have low-value or even negative-value claims. The Court therefore finds that class treatment is superior to other alternative available methods of litigation.

C. **Approval of Class Notice**

In approving a class settlement, a district court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). To satisfy the notice requirement, the party proposing settlement must comply with the guidelines contained in Rule 23(c)(2) and 23(e)(2). Rule 23(c)(2) provides that in Rule 23(b)(3) class actions, this Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

      i.     the nature of the action;
     ii.     the definition of the class certified;
    iii.     the class claims, issues, or defenses;
    iv.     that a class member may enter an appearance through an attorney if the member so desires;
     v.     that the court will exclude from the class any member who requests exclusion;
    vi.     the time and manner for requesting exclusion; and
   vii.     the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2).

The form of notice is committed to the district court's discretion, "subject to due process requirements." *Zimmer Paper Prods., Inc. v. Berger & Montague*, 758 F.2d 86, 90 (3d Cir. 1985). Due process requires notification (1) of "the nature of the pending litigation"; (2) of "the settlement's general terms"; (3) "that complete information is available from the court files"; and (4) "that any class member may appear and be heard at the Fairness Hearing." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 527 (D.N.J. 1997). "Although the notice need not be unduly specific," *In re Diet Drugs*, 226 F.R.D. at 518 (E.D. Pa. 2005), it must "describe, in detail, the nature of the proposed settlement, the circumstances justifying it, and the consequences of accepting and opting out of it." *In re Diet Drugs*, 369 F.3d at 308–10.

The Lead Plaintiffs' proposed Notice and Notice Plan provide detailed information, in plain English, about the rights of class members, including how to lodge objections; the nature of the class action and its history; the proposed settlement of $1.55 million; the process for filing a proof of claim; a description of how the claims will be processed; the fees and expenses that will be sought by Lead Plaintiffs' counsel, some 33.3% of the settlement; and how to evaluate court records. It provides contact information. It clearly instructs potential objectors to contact both the Court and counsel and closely tracks the model set forth by the Federal Judicial Center for securities class actions. *See In re Marsh Erisa Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010)

(approving substantially similar notice plan). The Notice forms "fairly, accurately, and neutrally describe the claims and parties in the litigation as well as the terms of the proposed settlement and the identity of persons entitled to participate in it." *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), aff'd, 892 F.2d 196 (2d Cir. 1989). They are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule 23 and due process are both satisfied by the Notice forms.

The Notice forms also comply with the PSLRA, 15 U.S.C. § 78u-4(a)(7). Under the PSLRA, "[a]ny proposed or final settlement agreement that is published" shall include a statement of the class's recovery; a statement on the potential outcome of the case, including the agreed-upon settlement; a statement on attorneys' fees; the identification of the lawyers' representatives; and the reason for the settlement. *Id.* All of these are included in the Notice forms.

### D. Final Approval Hearing

As the Court finds the class and settlement are preliminarily approved, a final hearing will be necessary. The Court schedules a hearing to determine whether to grant final approval of the proposed settlement for Monday, October 15, 2018 at 9:30 a.m.

### III. CONCLUSION

Plaintiffs' motion is **GRANTED**. An order follows.


Dated:   June 28, 2018                             /s Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge